IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS JOHNSON,                          )
                                         )
        PLAINTIFF,                       )          (WO)
                                         )
v.                                       )   CASE NO. 2:04-CV-117-F
                                         )
CITY OF CLANTON, ALABAMA, *et al.,*      )
                                         )
        DEFENDANTS.                      )

## MEMORANDUM OPINION AND ORDER

In February of 2004, Plaintiff Thomas Johnson brought this suit against a variety of

law enforcement officers and the entities for which they worked.  Plaintiff's allegations

against all defendants arise out of an alleged incident between Plaintiff and certain law

enforcement officers on May 25, 2002, which began outside a bar in Clanton, Alabama.  It

is alleged that two law enforcement officers for the City of Clanton, Defendant Officer

Dewayne Wright (hereinafter "Wright") and Defendant Samuel Olgilvie (hereinafter

"Olgilvie"),[1] improperly arrested Plaintiff and used excessive force against him to effectuate

the arrest.  It is further alleged that these officers then transported Plaintiff to the Chilton

County Jail where he was further physically abused by law enforcement, including Sheriff's

Deputies for the Chilton County Sheriff's Department.  Plaintiff's claims against the City of

Clanton, Alabama and Olgilvie and Wright in their official capacities have been dismissed

---

[1]    Although he is identified in the Complaint and Amended Complaint as Olgilvie,
it appears this defendant's correct name is Ogilvie.  Nevertheless, the Court will refer to him
in this Memorandum Opinion and Order as he is denominated in the Complaint and
Amended Complaint.

by a prior order of this Court.  (Doc. # 122 and Doc. # 154).  This Memorandum Opinion and Order addresses the motions to dismiss which Olgilvie and Wright have filed to the extent that those motions are directed to the claims against Olgilvie and Wright in their individual capacities.  Plaintiff's claims against the other remaining defendants will be addressed in a separate order, as will the merits of the motions for summary judgment filed by Olgilvie and Wright.

This cause is presently before the Court on the following motions: (a) the Motion to Dismiss the Complaint as Amended (Doc. # 49) filed by Dewayne Wright on July 8, 2004 and (b) the Motion to Dismiss the Complaint as Amended (Doc. # 50) filed by Olgilvie on July 8, 2004.  Because these motions raise many of the same issues, the Court will address these motions together in this Memorandum Opinion and Order.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4), and 1367.  No challenge is made to the personal jurisdiction over the parties or the appropriateness of venue; both of which are support by the facts of this case.

## MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion tests the *legal* sufficiency of the complaint.  A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.  *See Hishon v. King & Spalding,* 467

U.S. 69, 73 (1984); *see also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004) (a motion to dismiss may be granted only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief).  Put another way, a motion to dismiss only requires a court to determine whether a plaintiff's allegations, if proven, are sufficient to state a recognized claim at law upon which relief can be granted.  In analyzing a motion to dismiss, the Court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon,* 467 U.S. at 73.

## PROCEDURAL HISTORY

On February 11, 2004, Plaintiff Thomas Johnson (hereinafter "Johnson" or "Plaintiff") filed suit against the City of Clanton, Wright, Olgilvie, the Chilton County Commission, Stephen Brock, Robert Bland, Nick Baker, Kevin Driver, Mark Bass, Joe Monroe, and some fictitious defendants.  On April 26, 2004, Johnson filed his Amended Complaint (Doc. # 30).  The Amended Complaint names the same defendants as the Complaint except that it does not contain any allegations against any fictitious defendants.

On February 19, 2004, summons issued to Wright and Olgilvie (Doc. # 3 & 4). Service on Wright and Olgilvie was initially attempted by certified mail to them in care of the City of Clanton Police Department.  On February 23, 2004, summonses directed to Wright and Olgilvie were returned unexecuted (Doc. # 13).  On June 3, 2004, alias summonses issued for Wright and Olgilvie (Doc. # 43).  On June 21, 2004, Wright and

Olgilvie were served with the summons and complaint (Doc. # 47).

According to the allegations of the Amended Complaint, Wright is an officer with the police department of the City of Clanton, Alabama and Olgilvie is an "Explorer" with the police department of the City of Clanton. It is further alleged that at all time relevant Wright and Olgilvie were duly appointed and acting as police officers for the City of Clanton. Johnson alleges that as police officers for the City of Clanton, Wright and Olgilvie were authorized to enforce the laws of Alabama and were acting under color of the law of Alabama. Johnson further alleges that Wright and Olgilvie were acting within the course and scope of an agency or employment relationship with the City of Clanton.

Plaintiff alleges that he and his wife went to the Skylight Bar in Clanton, Alabama late on May 25, 2002. They stayed at the bar for approximately fifteen minutes without having any alcoholic beverages. Plaintiff and his wife returned to their vehicle and were in the process of getting in it when Wright pulled up behind Plaintiff's vehicle and yelled at Plaintiff asking what he was doing. Plaintiff responded that they were not doing anything and were getting ready to go. Wright got out of his vehicle and asked if Plaintiff was urinating. Plaintiff explained that he was not and that the water on the ground was coming from the air conditioner. Plaintiff's wife asked the office what was going on and he told her to shut up. Olgilvie got out of the police car. Wright was yelling at Plaintiff and stating that he could arrest Plaintiff. Plaintiff's wife continued to apologize and to ask if they could leave. Wright repeatedly insisted that Plaintiff say "Thank you officer sir," and "Yes sir, Mr.

Police Officer."  Wright told Plaintiff's wife that if she did not shut up he would arrest her. Plaintiff responded that Wright could not arrest his wife because they had not done anything. Plaintiff then proceeded to get into his car.  Wright yelled "You're under arrest" and sprayed mace in Plaintiff's face.

After being sprayed with mace, Plaintiff grabbed his eyes in pain and slumped forward.  Wright struck him behind the knees with a nightstick and caused Plaintiff to fall on the ground.  While Plaintiff was on the ground and after he was handcuffed, Wright and Olgilvie struck Plaintiff several times with night sticks and slammed Plaintiff's head into the paved parking lot causing him to bleed.   Wright and Olgilvie arrested Plaintiff and transported him to jail.  When the jail clerk asked them what the charges would be, Wright and Olgilvie responded that they did not know the charge.  Once at the jail, Plaintiff alleges that he was beaten, choked, and strapped to a chair by Brock, Bland, Baker, Drive, Monroe and Bass.  At some point, Plaintiff was transported to the hospital.

Plaintiff alleges he suffered bodily injury, financial losses including medical expenses, embarrassment and humiliation, pain and suffering, mental anguish and emotional distress as a result of the conduct of the defendant officers.  Plaintiff alleges that based on the totality of circumstances at the time of the incident, he was unlawfully arrested and subjected to the use of excessive force.

The Amended Complaint sets forth several claims.  Several of the claims allege violations of Plaintiff's rights under the United States Constitution.  These claims are brought

pursuant to 42 U.S.C. § 1983.  The constitutional violations alleged are: a violation of the Fourth Amendment prohibition on the use of excessive force (Count One);[2] a violation of the Fourth Amendment prohibition on unreasonable seizures (Count Two); and a Fourth Amendment violation of the prohibition on arrest without a warrant or probable cause (Count Three).  In addition to these claims under federal law, the Amended Complaint also contains several claims pursuant to Alabama law: assault (Count Four); battery (Count Five); negligence (Count Six); and false arrest/false imprisonment (Count Seven).  Plaintiff seeks a declaration that the practices complained of are unlawful and in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; compensatory damages of $1,000,000; punitive damages of $5,000,000; attorneys' fees and costs; and all other relief the Court deems just and proper.

## DISCUSSION

### A.  Untimely Service of Process

Olgilvie and Wright argue that the complaint is due to be dismissed because they were not served with summons and complaint in this matter within the time provided by Federal Rule of Civil Procedure 4(m).[3]  It is undisputed that service was perfected on Olgilvie and

---

[2]  Although the heading on Count One refers only to the Fourth Amendment, the actual allegations of this count also allege violations of rights under the Fifth and Fourteenth Amendments.  Am. Compl. at ¶ 35.

[3]  Olgilvie and Wright also move for summary judgment based on this contention.  This issue is one which can be resolved by a motion to dismiss.  Accordingly, this Court will rule on the service issue in this Memorandum Opinion and Order.  The parties are advised however, that in so doing, this Court has fully considered the argument made on this issue

Wright one hundred and twenty four days after the Complaint was filed.  It is also undisputed that Plaintiff first attempted service on Olgilvie and Wright in February of 2004, but that service failed.   Despite learning that the attempted service on these defendants had failed, Plaintiff did not seek to have the summonses for them reissued until June 3, 2004.  It is also undisputed that the statute of limitations on Plaintiff's claims has run.  Accordingly, if his claims against Olgilvie and Wright were dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m), those claims could not be refiled.

The Federal Rules of Civil Procedure are intended to "be construed and administered to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.  These rules govern the procedural life of civil actions pending in the United States District Courts.  Parties appearing in cases pending in federal court must comply with the dictates of the Federal Rules of Civil Procedure.

A federal civil action is commenced by the filing of a complaint with the Court.  Fed. R. Civ. P. 3.  In this case that event occurred on February 11, 2004.  The plaintiff is responsible for service of a summons and a copy of the complaint on defendant within the time allowed for service under Federal Rule of Civil Procedure 4(m). Fed. R. Civ. P. 4(c)(1). While a plaintiff may request that a defendant waive service of summons, the defendant need not do so.  Fed. R. Civ. P. 4(d).  If service is not waived, the person effecting service shall make proof thereof to the Court.  Fed. R. Civ. P. 4(l).

---

in the briefs submitted in support of and in opposition to the motions for summary judgment these defendants subsequently filed.

The Federal Rules of Civil Procedure also address the time within which a plaintiff must serve the complaint.

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service of an appropriate period. ...

Fed. R. Civ. P. 4(m).  The Advisory Committee Notes explain that this rule requires a court to extend the time for service where the plaintiff shows good cause for failing to service the defendant within the 120 days and "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there was no good cause shown." Advisory committee's note to 1993 amendment of Fed. R. Civ. P. 4(m).  The Advisory Committee Notes further provide that even in the absence of good cause for failure to serve within the 120 days, additional time for service may be justified where the applicable statute of limitations would bar the refiled action or if the defendant is evading service or conceals a defect in the attempted service.  *Id.*

In March of 2005, the Eleventh Circuit explicitly held that Rule 4(m) "grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause." *Horenkamp v. Van Winkle & Co.,* 402 F.3d 1129, 1132 (11th Cir. 2005).  The Eleventh Circuit further explained that the Advisory Committee Note to Rule 4(m) provides guidance as to what factors may justify the grant of an extension of time

for service of process in the absence of good cause. *Id.* "Although the running of the statute of limitations does not require that a district court extend the time for service of process under the new rule," the Eleventh Circuit observed that in some circumstances, including circumstances where the 120 days time for service runs because of error or mistakes by plaintiff's counsel, it militates in favor of the exercise of a district court's discretion to do so. *Id.* at 1130-32. It is worth noting that prior to the 1993 amendments to Rule 4(m) the law of this Circuit, which was predicated on the prior version of the rule, was different than the rule as set forth in *Horenkamp*. *Id.* at 1131-32 & n.2.

In the instant case, the Court deems it appropriate to exercise its discretion to extend Plaintiff's time for service. The Court cannot say that Plaintiff has shown good cause for failing to perfect service on Olgilvie and Wright within one hundred and twenty days of filing the lawsuit; however, even in the absence of good cause, this Court has the discretion to approve untimely service and reject a motion to dismiss on this basis. Dismissal of this action, even without prejudice, would effectively foreclose Plaintiff's claims against Wright and Olgilvie because the statute of limitations has run. While Plaintiff did not accomplish service of process on these defendants within the time provided by Rule 4(m), he did make efforts to do so. Moreover, Plaintiff perfected service on Wright and Olgilvie one hundred and twenty-four days after filing the Complaint. Accordingly, the circumstances of this case militate in favor of the exercise of this Court's discretion to extend the time for service of process under Federal Rule of Civil Procedure 4(m).

In light of the foregoing, the Motion to Dismiss the Complaint as Amended (Doc. # 49) filed by Dewayne Wright on July 8, 2004 and the Motion to Dismiss the Complaint as Amended (Doc. # 50) filed by Olgilvie on July 8, 2004 are DENIED to the extent that they are based on the contention that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 4(m) due to untimely service.

## B. Federal Claims pursuant to 42 U.S.C. § 1983

### 1. Action Under Color of Law

42 U.S.C. § 1983 provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g.,* 42 U.S.C. § 1983;[4] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).

Thus, to employ § 1983 to secure a remedy for a deprivation of a federally secured

---

[4]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

right, a plaintiff must generally show that the alleged deprivation was committed by a person acting under color of state law. *See, e.g., West v. Atkins,* 487 U.S. 42 (1988); *Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1276-77 (11th Cir. 2003). Conversely, purely private conduct is not within the reach of the statute. *Focus on the Family,* 344 F.3d at 1277. The "under color of law" requirement of § 1983 has consistently been treated as the same thing as the Fourteenth Amendment's state action requirement. *Focus on the Family,* 344 F.3d at 1276-77 & n.4. "Section 1983's state action requirement applies regardless of the nature of the substantive deprivation being alleged." *Id.* at 1277.

The Eleventh Circuit has explained that

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.

*West,* 487 U.S. 42, 49 (1988) (internal quotations omitted). The Eleventh Circuit Court of Appeals has employed three distinct tests in determining whether the actions of a private entity or individual are properly attributed to the state. The Eleventh Circuit has summarized these tests as follows:

> Previously, this circuit set forth the three primary tests the Supreme Court has used to determine whether state action exists: (1) the public function test; (2) the state compulsion test; and (3) the nexus joint action test. The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the

11

Constitution." The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." We must determine on a case-by-case basis whether sufficient state action is present from a non-state actor (defendant) to sustain a section 1983 claim.

*Focus on the Family,* 344 F.3d at 1277 (quoting *Willis v. University Health Servs., Inc.,* 993 F.2d 837, 840 (11th Cir. 1993).

Olgilvie argues that he cannot be subject to liability under 42 U.S.C. § 1983 because he is not a "state actor." Citing several cases which held that the Boy Scouts of America and its members are not state actors for purposes of liability under § 1983, Olgilvie argues that he was part of a scouting program at the time of the incident and therefore cannot have been a state actor. The Court notes that Olgilvie's argument on this issue is predicated on facts not alleged in the Complaint or Amended Complaint. Moreover, the argument clearly mistakes the alleged basis for holding him liable under § 1983. No mention is made in the Amended Complaint of him being a member of the Boy Scouts of America. The Amended Complaint alleges a connection between Olgilvie and the City of Clanton Police Department. Specifically, the Amended Complaint alleges that Olgilvie was "duly appointed and acting as [a] Police Officer for the City of Clanton" and as such was acting under color of law by enforcing the laws of Alabama. Am. Compl. at ¶ 14. The Amended Complaint further alleges that Olgilvie was an agent or employee of the City of Clanton, Alabama and was acting in the course and scope of his agency or employment. *Id.* at ¶ 15. It is further alleged that immediately before beating Plaintiff, Olgilvie had been riding in a police car. *Id.* at ¶

12

22.  It is alleged that Olgilvie beat Plaintiff with a nightstick after Plaintiff was placed in handcuffs and told he was under arrest.  *Id.* at ¶ 24.  Finally, it is alleged that Olgilvie participated in arresting Plaintiff and transporting him to the jail after his arrest.  *Id.* at ¶ 26.

Given the procedural posture of this case, the Court must accept as true all well-pleaded factual allegations and view them in a light most favorable to Johnson.  When the allegations are viewed in this manner, there is no question that a jury could find that Olgilvie was a state actor and could be liable pursuant to § 1983.  Accordingly, Olgilvie's motion to dismiss is due to be DENIED to the extent that it is predicated on his contention that his not a state actor.

### 2.  Failure to State a Claim

#### a.  Fifth and Fourteenth Amendment Claims

With respect to each of Plaintiff's claims pursuant to 42 U.S.C. § 1983, Olgilvie and Wright argue that the Amended Complaint fails to state a claim for which relief can be granted.  In Count One of the Amended Complaint, Plaintiff alleges that by their use of excessive force, these defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Am. Compl. at ¶ 35.  In Count Two of the Amended Complaint, Plaintiff alleges that Olgilvie and Wright violated his Fourth Amendment right to be free from an unreasonable seizure.  Am. Compl. at ¶ 38.  In Count Three of the Amended Complaint, Plaintiff alleges that Olgilvie and Wright violated his Fourth and Fourteenth Amendment rights to be free from an unlawful arrest and from a

deprivation of his liberty without due process of law.  Am. Compl. at ¶ 41.  Wright and Olgilvie argue that there is no cause of action for an alleged violation of substantive due process rights based upon claims of illegal search and seizures or use of excessive force and that such claims must be analyzed under the Fourth Amendment rather than under the Fifth or Fourteenth Amendments.  Wright and Olgilvie also contend that the Amended Complaint fails to adequately allege claims for violations of the Fourth Amendment.

With respect to Plaintiff's claims against Wright and Olgilvie pursuant to 42 U.S.C. § 1983 for alleged violations of his rights to substantive or procedural due process as provided by the Fifth and Fourteenth Amendments, Plaintiff agrees that these claims are due to be dismissed as to these defendants.  Plaintiff does not agree to the dismissal of these claims as to any other defendants.  Based on its review of the submissions of the parties, the Court is satisfied that Plaintiff's claims against Wright and Olgilvie pursuant to 42 U.S.C. § 1983 for alleged violations of the Fifth or Fourteenth Amendment guarantees of substantive and procedural due process are due to be DISMISSED.

### b.  Fourth Amendment Excessive Force Claim

With respect to Plaintiff's claims against Wright and Olgilvie pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights to be free from the use of excessive force during the course of his arrest, Plaintiff contends that these claims are sufficiently plead to survive the motions to dismiss.  The Court agrees.

All claims that law enforcement officers have used excessive force in the course of

an arrest, investigatory top, or other "seizure" of a free citizen are analyzed under the Fourth Amendment's reasonableness standard. *See, e.g., Graham v. Connor,* 490 U.S. 385, 395 (1989). Whether the force is reasonable hinges on the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "reasonableness" of the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* The "calculus of reasonableness" must embody allowance for the fact that police officers are often forced to make split-second judgments in tense, uncertain, and rapidly changing situations. *Id.* at 396-97.

The Eleventh Circuit Court of Appeals has interpreted the Supreme Court's language in *Graham* as requiring the balancing of three factors in determining whether the force applied was reasonable. *Draper v. Reynolds,* 369 F.3d 1270, 1277-78 (11th Cir. 2004). These factors are the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted. *Id.* The application of *de minimus* force, without more, will not violate the Fourth Amendment's prohibition against the use of excessive force. *See, e.g., Nolin v. Isbell,* 207 F.3d 1253, 1257 (11th Cir. 2000).

Viewing the facts alleged in the Amended Complaint in the light most favorable to the Plaintiff, all the *Graham* factors weigh in favor of Plaintiff. Plaintiff alleges that he was doing nothing more than attempting to enter his vehicle in the parking lot of a bar when he

was confronted by Wright and Olgilvie.  He further alleges that Wright verbal abused Plaintiff and threatened to arrest him and demanded that Plaintiff say "Thank you Office Sir" and "Yes sir, Mr. Police Officer."  It is further alleged that Wright also yelled at Plaintiff's wife and threatened to arrest her.  All the while, Plaintiff insisted that he and his wife had not done anything and could not be arrested.  Wright yelled that Plaintiff was under arrest.  When Plaintiff turned to Wright and asked him "for what?" Wright sprayed Plaintiff with mace, struck him behind the knees causing Plaintiff to fall, and beat Plaintiff even after he had been handcuffed.  It is also alleged that Olgilvie participated in striking Plaintiff several times after he was handcuffed and that Olgilvie and Wright slammed Plaintiff's head into the paved parking lot causing him to bleed.  At the motion to dismiss stage, the Court must take the facts set forth in the Amended Complaint as true and draw all reasonable inferences in favor of Plaintiff.  There is nothing in these allegations of the reasonable inferences that can be drawn from them that would support the inference that Plaintiff posed a significant threat to the safety of himself, Wright, Olgilvie or others.  Examining the application of the Eleventh Circuit's articulation of the *Graham* factors to the instant case, it is not apparent from the allegations in the Plaintiff's Amended Complaint that Wright and Olgilvie necessarily needed to apply the degree of force allegedly used .  Because the weighing of the relevant factors balances in favor of Plaintiff, the Court finds that Plaintiff has stated a claim pursuant to 42 U.S.C. § 1983 arising out of the use of excessive force in violation of the Fourth Amendment.

### c.  Fourth Amendment - Unlawful Arrest/Unreasonable Seizure

False arrest claims under § 1983 are analyzed solely as unreasonable seizure claims under the Fourth Amendment and not as claims for deprivation of due process under the Fourteenth Amendment.  *See, e.g., Albright v. Oliver,* 510 U.S. 266, 274 (1994); *Hamm v. Powell,* 893 F.2d 293, 294 (11th Cir. 1990).  "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."  *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990).  Where probable cause for an arrest exists, however, no false arrest claim pursuant to section 1983 is viable.  *Id.* at 1505-06.

> Probable cause [to arrest] exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.  Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information, and probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life.  When the facts are not in dispute, whether probable cause existed is a question of law.

*Id.* at 1506 (internal citations and quotations omitted).

Plaintiff alleges that Wright and Olgilvie arrested him without a warrant and without probable cause.  Plaintiff's factual allegations, when viewed in the light most favorable to him, support this contention.  For purposes of this motion, the Court must accept Plaintiff's allegations as true.  Accordingly, the Court finds that Plaintiff has stated a claim pursuant 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth Amendment to be free from unlawful arrest and unreasonable seizure.

### 3. Qualified Immunity

Defendants Olgilvie and Wright argue that the doctrine of qualified immunity bars Plaintiff's claims of excessive force and unlawful arrest.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  *Accord, Hope v. Pelzer*, 536 U.S. 730 (2002).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  *See also Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003).

Courts must resolve questions of qualified immunity as early as possible in the litigation. *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir. 2003).  When qualified immunity is raised by a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  A motion to dismiss based on qualified immunity should be granted if the complaint fails to allege the violation of a clearly established constitutional right.  *Id.* at 995.

### a. Discretionary Authority

18

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred." *Id.* (internal quotation marks omitted).  Based on the allegations of the case it would appear that Wright and Olgilvie were so acting.

### b.  Constitutional Violation

The next step in the qualified immunity analysis is the determination of whether the plaintiff's allegations, if true, establish a constitutional violation.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

In the instant case, the Court has already found that Plaintiff's allegations could support a violation of the Fourth Amendment's prohibition against the use of excessive force or the Fourth Amendment's prohibition against unlawful arrest or unreasonable seizure.  The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the rights to be free from the use of excessive force in the course of arrest and the right to be free from arrest without probable cause.  In the context of the qualified immunity analysis, the question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer. *Vinyard,* 311 F.3d at 1347.  Thus, for the excessive force claim, this

Court must ask whether a reasonable law enforcement officer would believe that the level of force used was necessary in the situation at hand. *Id.* Similarly for the unlawful arrest/unreasonable seizure claim, the Court must ask whether a reasonable law enforcement officer would have believed he had probable cause to arrest. The Court is satisfied that when the allegations in the Amended Complaint and the reasonable inferences drawn from those allegations are viewed in the light most favorable to the Plaintiff, there is sufficient showing of a constitutional violation for this case to survive the motion to dismiss.

Because the alleged conduct violated constitutional rights, the next step of the inquiry is to determine whether the rights at issue were "clearly established." *Vinyard,* 311 F.3d at 1349. As the Eleventh Circuit Court of Appeals put it, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier,* 533 U.S. at 201). In so doing, a court must do more than just compare the facts of the instant case to prior cases to determine if a right is clearly established; it must also assess whether the facts of the instant case fall within statements of general principle found in appropriate precedent. *See, e.g., Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates law even in novel factual circumstances. Indeed, in *[United States v.] Lanier* [, 520 U.S. 259 (1997)], we expressly rejected a requirement that previous cases be 'fundamentally similar.'"); *Holloman,* 370 F.3d at 1278; *Vinyard,* 311 F.3d at 1351. Indeed, the "salient question... is whether the state of the law...gave [the officers] *fair warning* that

20

their alleged treatment [of the plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741.

Officials sued pursuant to § 1983 have a right to fair notice. *Id.* at 739. This notice can be given in three ways. *Vinyard*, 311 F.3d at 1350-53. First, the words of the federal statute or constitutional provision may in themselves be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law. *Id.* at 1350. Second, preexisting case law may serve to provide fair notice. *Id.* at 1351. Case law need not arise out of factually identical situations to clearly establish law for purposes of the qualified immunity analysis. *Id.* at 1351. Broad legal principles established in case law may serve to clearly establish the law even for cases arising out of factually different situations. *Id.* Third, in the absence of case law with a broad holding sufficient to provide fair notice, fact specific precedents may serve to clearly establish the law arising out of martially similar factual circumstances. *Id.* at 1351-52.

The Eleventh Circuit has previously found in some cases that the Fourth Amendment itself is sufficiently clearly to establish that certain conduct violates the protections of that provision. Specifically, it has observed that in the Fourth Amendment context, it has sometimes found violations of the Fourth Amendment in excessive force cases involving conduct "far beyond the hazy border between excessive and acceptable force" even in the absence of prior case law. *Vinyard*, 311 F.3d at 1350 n.18. Cases in which the language of the Fourth Amendment itself has been sufficient to put the officer on notice that his conduct

was in violation of the law appear to be cases involving the use of significant force after an arrestee has been subdued.  *Id.*  For example, beating a suspect, kicking a suspect, or slamming the head of a suspect the ground is conduct which deprives the law enforcement officers of qualified immunity when the suspect was handcuffed and did not struggle or resist the officers in any way and did not attempt to flee.  *Slicker v. Jackson,* 215 F.3d 1225, 1232-33 (11th Cir. 2000).

In light of the allegations in this case, the Court is persuaded that Wright and Olgilvie had fair warning that the conduct in which they were allegedly engaged violated the Fourth Amendment's prohibitions on excessive force.  Moreover, the Court finds that at this stage in the litigation it cannot say that based on the facts as alleged and the reasonable inferences from those facts, a reasonable officer could have believed that he had probable cause to arrest Plaintiff.  Arrest without probable cause is a violation of clearly established law under the Fourth Amendment.  Accordingly, Wright and Olgilvie are not entitled to qualified immunity at this stage in the litigation and their motions to dismiss on that ground must be denied.

## C.  State Law Claims[5]

### 1.  Immunity under the Volunteer Service Act

---

[5]  Olgilvie and Wright argue that this Court should decline to exercise supplemental jurisdiction over the claims against them pursuant to Alabama law.  This Court has considered the factors relevant to the determination of whether it should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and finds it is appropriate for it to exercise its discretion to hear all the claims together in one action.  Accordingly, to the extent that their motions to dismiss are predicated on a contention that this Court should decline to exercise supplemental jurisdiction over the state law claims, the motion are DENIED.

Olgilvie contends that is immune from Plaintiff's Alabama law claims under the Volunteer Service Act and seeks the dismissal of such claims against him on the basis of this immunity.  Alabama has enacted a Volunteer Service Act which provides for immunity to volunteers in some circumstances.  *See* Ala. Code § 6-5-336 (1975).  Pursuant to the Volunteer Service Act,

> Any volunteer shall be immune from civil liability in any action on the basis of any act or omission of a volunteer resulting in damage or injury if: (1) the volunteer was acting in good faith and within the scope of such volunteer's official functions and duties for a nonprofit organization, a nonprofit corporation, hospital, or a government entity; and (2) the damage or injury caused was not caused by willful or wanton misconduct by such volunteer.

Ala. Code § 6-5-336(d) (1975).  The Volunteer Services Act defines "volunteer" as "[a] person performing services for a nonprofit organization, a nonprofit corporation, a hospital, or a government entity without compensation, other than reimbursement for actual expenses incurred." Ala. Code § 6-5-336(c)(4) (1975).  For purposes of this statute, a governmental entity includes a municipality such as the City of Clanton.  Ala. Code § 6-5-336(c)1) (1975).

Given the procedural posture of this case, this Court must accept as true all well-pleaded factual allegations and view them in a light most favorable to Johnson.  When the factual allegations alleged are viewed in the light most favorable to Johnson, this Court cannot find that it is clear that no relief could be granted to Johnson on his state law claims against Olgilvie under any set of facts that could be proven consistent with the allegations.  The immunity provided to volunteers pursuant to the Volunteer Services Act is limited to

good faith actions and cases in which the damage or injury was not caused by willful or wanton misconduct by the volunteer.  The Amended Complaint alleges conduct outside of the protections of the Volunteer Services Act.  Accordingly, to the extent that Olgilvie seeks dismissal of the state law claims against him on the basis of the immunity provided by the Volunteer Services Act, the motion is DENIED.

### 2.  Discretionary function immunity

Wright and Olgilvie argue that to they are entitled to discretionary function immunity and that consequently, Plaintiff's claims against them pursuant to Alabama law for allegedly negligent conduct are due to be dismissed.  The Court agrees that this immunity issue is more appropriately analyzed at the summary judgment stage when the Court will have before it a more developed factual record from which to determine whether Wright and Olgilvie were engaged in discretionary acts or were acting fraudulently, in bad faith or with malice or willfulness.  Viewed in the light most favorable to Plaintiff, the allegations of the Amended Complaint could, if proven, make this immunity unavailable to Wright and Olgilvie. Accordingly, the motion to dismiss on this ground is due to be DENIED.

### 3.  Failure to state a claim for assault, battery, or false arrest/false imprisonment

Count Four and Count Five of the Amended Complaint set forth claims pursuant to Alabama law for assault and battery.  These claims are predicated on the allegations that Wright and Olgilvie beat Plaintiff while he was handcuffed and slammed his head onto the parking lot.  Count Seven of the Amended Complaint sets forth a claim pursuant to Alabama

24

law for "false arrest/false imprisonment." This claim is predicated on Plaintiff's allegation that Olgilvie and Wright "detained [him], prohibited him from leaving, circumscribed his physical liberty, ordered him and compelled him to go from place to place without a warrant and with neither reasonable suspicion nor probable cause to do so." Am. Compl. at ¶ 60. Plaintiff further alleges that he was falsely arrested and imprisoned. Am. Compl. at ¶¶ 61-62.

In support of their motions to dismiss, Olgilvie and Wright argue that they did not commit the torts of battery, assault, false arrest, or false imprisonment. Specifically they argue that to establish these claims Plaintiff must show that Wright and Olgilvie acted unlawfully and that Plaintiff cannot do so. Of course, given that this case is pending on a motion to dismiss, the real question is whether Plaintiff has adequate alleged facts which would support these claims. In response to the motions to dismiss, Plaintiff has argued that he has adequately plead facts in support of his false arrest/false imprisonment claim. The Court agrees. At this stage in the proceedings, the Court must accept as true the allegations of the Amended Complaint and all reasonable inferences which can be drawn from those allegations. When the case at hand is considered in this fashion, the Court cannot say that Plaintiff could prove no set of facts in support of these claims which would entitle him to relief for these state law torts. Accordingly, the motion to dismiss these claims is due to be DENIED.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) The Motion to Dismiss the Complaint as Amended (Doc. # 49) filed by Dewayne Wright on July 8, 2004 is GRANTED in part and DENIED in part as set forth in this Memorandum Opinion and Order.

(2) The Motion to Dismiss the Complaint as Amended (Doc. # 50) filed by Olgilvie on July 8, 2004 is GRANTED in part and DENIED in part as set forth in this Memorandum Opinion and Order.

(5)   All claims against Dwayne Wright and Samuel Olgilvie in their individual capacities for alleged for alleged violations of the Fifth or Fourteenth Amendment guarantees of substantive and procedural due process are DISMISSED with PREJUDICE.

(6) All claims against Dwayne Wright and Samuel Olgilvie in their individual capacities pursuant to 42 U.S.C. § 1983 for alleged violations of Fourth Amendment remain pending.  Given the pendency of these claims, this Court cannot find that Plaintiff's claim pursuant to 42 U.S.C. § 1988 is due to be dismissed at this time.

(7) Plaintiff's claims pursuant to Alabama law also remain pending.

(8)   Nothing in this Order is intended to in any way impair or address Plaintiff's claims against any defendants other than Dwayne Wright and Samuel Olgilvie.

DONE this the 7th day of July, 2005.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

26